IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BOOK DEPOT PARTNERSHIP, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:05-CV-163 |
| ) | |
| AMERICAN BOOK CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

On June 23, 2005, the court conducted a hearing on plaintiffs' motion for preliminary injunction [doc. 5] and defendants' partial motion to dismiss [doc. 2]. At issue in each motion is whether the court should enjoin a pending arbitration between the parties.[1] For the reasons set forth in this opinion, defendants' motion will be granted, and plaintiff's motion will be denied. The parties' arbitration will go forward.

I.

*Procedural Background*

On March 21, 2005, American Book Company ("ABC") filed civil action 3:05-CV-152. The eight defendants therein are: True Remainders, Ltd.; Book Depot Partnership

---

[1] Defendants move for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of that portion of the complaint requesting "injunctive relief to enjoin the pending arbitration between the parties." [doc. 2].

("Book Depot"); John Hultink; Paideia Press, Ltd.; 1251526 Ontario, Ltd.; 1251418 Ontario, Ltd.; 1251415 Ontario, Ltd.; and 1251413 Ontario, Ltd. ABC seeks to recover money allegedly owed on various book and video sales contracts.

On March 23, 2005, plaintiffs Book Depot, True Remainders, John Hultink ("Hultink"), and Jenny Hultink filed civil action 3:05-CV-163. The defendants therein are ABC and its principal Dean Winegardner ("Winegardner"). The complaint asks the court to enjoin an arbitration initiated by ABC and Winegardner. Plaintiffs also: (1) seek damages for alleged breaches of the same (and/or related) contracts at issue in case 3:05-CV-152; and (2) ask for a declaratory judgment that Hultink and Winegardner did not reach a binding final merger agreement.

II.

*Factual Background*

ABC is engaged in the business of selling discounted books and videos. Hultink's business entities Book Depot and True Remainders are, or have been, two of ABC's customers.

ABC (through Winegardner) engaged in merger (or "stock transaction") negotiations with Book Depot (through Hultink) and True Remainders (through Hultink and other principals). As part of the negotiations, these parties executed a Confidential Letter of Intent ("LOI") on June 23, 2004. The LOI provides in material part:

14. This transaction is to close on or before August 31, 2004.

15. This document to be replaced by comprehensive agreement.

[Book Depot Complaint, ex. A].

On August 3, 2004, Winegardner, ABC, Book Depot, and True Remainders executed a First Addendum ("Addendum") to the LOI. The Addendum provides in material part:

> 5.2. . . . the shareholders and partners of ABC, [Book Depot] and Hultink will use reasonable endeavors to negotiate an agreement of the Transaction as contemplated by this Addendum and the Letter of Intent on or before August 31, 2004. . . . *If the Parties are not able to negotiate a final agreement, the Parties agree to arbitrate the terms of the final agreement. The final agreement shall be exclusively determined, and all disputes shall be settled, by arbitration in accordance with the commercial rules of the American Arbitration Association.* . . . **The Parties hereby acknowledge that this provision constitutes a waiver of their right to commence a lawsuit in any jurisdiction with respect to the matters which are required to be settled by arbitration as provided in this Section 5.2.**
>
> . . .
>
> 6.2. The Parties agree that this Addendum and the Letter of Intent are intended to be a binding agreement, legally enforceable by the Parties.
>
> . . .
>
> 6.4. This Addendum and the Letter of Intent shall be construed and adjudicated under the jurisdiction and laws of Knoxville, Tennessee, USA.
>
> . . .
>
> 10. The definitive agreement will contain such other representations, warranties, covenants, terms, and conditions as are normally found in agreements of such nature.
>
> . . .
>
> 12. The Parties shall use their best efforts to negotiate and execute a definitive agreement on or prior to August 23, 2004, and to close the Transaction contemplated by such definitive agreement on or prior to August 31, 2004.

> 13. The Parties acknowledge and agree that this Addendum and the Letter of Intent have been fully negotiated by the Parties and that no provision of this Addendum or the Letter of Intent shall be construed or interpreted against the draftsman [Winegardner].

[Book Depot Complaint, ex. B] (emphasis added).

The parties did not reach a final agreement. The "stock transaction" accordingly never took place. On November 22, 2004, Winegardner and ABC initiated arbitration versus Book Depot, True Remainders, Hultink, and the partners of Book Depot. [Book Depot Complaint, ex. C]. Therein, ABC and Winegardner characterized the disagreement as a "Dispute over consummation of a stock transaction as set forth in a June 23, 2004 Letter of Intent subject to an August 3, 2004 First Addendum." *Id*. The relief sought is "Specific performance of the letter of intent, as addended, as contained in paragraph 5.2 of the First Addendum." *Id*.

III.

*Analysis[2]*

Book Depot moves to enjoin ABC "from proceeding with any arbitration with the American Arbitration Association ["AAA"] pursuant to the Confidential Letter of Intent and First Addendum." [Doc. 5]. Book Depot argues that it did not agree "to arbitrate the matters in dispute" - specifically, "Defendants' ongoing efforts to force Plaintiffs into a contract to be drafted without their consent." [Doc. 6]. The court need not analyze the four familiar balancing factors relating to whether an injunction *should be* granted until it first

---

[2] For ease of reference, the parties will hereinafter be collectively referred to as "Book Depot" and "ABC."

determines whether the subject arbitration *can* be enjoined.

There exists a strong federal presumption in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). Despite this presumption, there must nonetheless exist a valid agreement to submit a particular issue to the arbitrator. *AT&T Techs., Inc. v. Communication Workers of America*, 475 U.S. 643, 648-49, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986). In determining the scope of such agreements, "any doubts regarding arbitrability should be resolved in favor of arbitration," *Glazer*, 394 F.3d at 451, even if the issue to be presented to the arbitrator "appears to the court to be frivolous." *AT&T*, 475 U.S. at 649-50, 106 S. Ct. at 1419. "[I]ssues will be deemed arbitrable unless it is clear that the arbitration clause has not included them." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S. Ct. 1920, 1924-25, 131 L. Ed. 2d 985 (1995) (citation and quotation omitted).

The threshold question now before this court (and a question that "is rather arcane," *id.*) is *who* (this court or the arbitrator) is empowered to decide whether Book Depot agreed to arbitrate the particular matter now at issue ("Specific performance of the letter of intent, as addended"). The answer "turns upon what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943, 106 S. Ct. at 1923 (emphasis in original). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*, 475 U.S. at 649, 106 S. Ct. at 1418.

To be certain, the Addendum does not "clearly and unmistakably" include language to the effect of "we agree to arbitrate arbitrability." However, section 5.2 of the Addendum provides in part that "all disputes shall be settled [] by arbitration in accordance with the commercial rules of the American Arbitration Association." The AAA's Commercial Rule 7 in turn states that "The arbitrator shall have the power to rule on his or her own jurisdiction [i.e., arbitrability], including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA, Commercial Arbitration Rule 7(a) (2003). The AAA's Commercial Rule 1 further provides that "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association under its Commercial Arbitration Rules." *Id.*, Rule 1(a).

ABC argues that, by agreeing in the Addendum to arbitrate in accordance with the AAA's Commercial Rules (and thus incorporating Rule 7's grant of jurisdictional authority), Book Depot "clearly and unmistakably" agreed to arbitrate the issue of arbitrability. Although the Sixth Circuit has not addressed this issue, a significant majority of courts (in agreement with ABC) "have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *See Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205,

208 (2d Cir. 2005).³ Assuming that the Sixth Circuit would join in this emerging line of authority, this court concludes that Book Depot agreed to "arbitrate arbitrability." Book Depot "cannot sign a document that states that AAA procedures will govern disputes between the parties, and then claim [it] did not understand that AAA procedures will govern disputes between the parties." *Citifinancial*, 359 F. Supp. 2d at 551.

In the alternative, the court itself concludes that Book Depot agreed to arbitrate "Specific performance of the letter of intent, as addended."

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Such a presumption is particularly applicable where the clause is as broad as the one employed in this case[.]

*AT&T*, 475 U.S. at 650, 106 S. Ct. at 1419 (citations and quotation omitted).

---

³ *Accord P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) (party's consent to AAA arbitration equaled consent to be bound by AAA's procedural rules); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (arbitration rules of the International Chamber of Commerce); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 549-552 (S.D. Miss. 2005); *Bayer CropScience, Inc. v. Limagrain Genetics Corp, Inc.*, No. 04 C 5820, 2004 WL 2931284 (N.D. Ill. Dec. 9, 2004); *TES Franchising, LLC v. Loveman*, No. Civ. A. 304CV219SRU, 2004 WL 885198 (D. Conn. Apr. 20, 2004); *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 308-09 (D. Me. 2003); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 684-85 (S.D. Fla. 2001); *Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Group*, No. CIV.A. 01-991, 2001 WL 1090148 (E.D. Pa. Sept. 13, 2001); *Lovell v. Harris Methodist Health Sys.*, No. Civ. A. 3:99CV2809G, 2000 WL 351384 (N.D. Tex. Mar. 10, 2000) (rules of private arbitration service); *Daiei, Inc. v. United States Shoe Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991) (International Chamber of Commerce). But see *Diesselhorst v. Munsey Bldg., L.L.L.P.*, No. Civ. AMD 04-3302, 2005 WL 327532 (D. Md. Feb. 9, 2005) (incorporation of AAA rules "did not clearly and unmistakably demonstrate an intent to have an arbitrator determine the question of arbitrability."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02-1335-B, 03-1343-B, 2004 WL 524429 (D.N.H. Mar. 16, 2004) (same, but not discussing the impact of current Rule 7).

Book Depot executed a broad arbitration clause, agreeing at § 5.2 of the Addendum that "If the Parties are not able to negotiate a final agreement, *the Parties agree to arbitrate the terms of the final agreement*. The final agreement *shall be exclusively determined*, and *all disputes shall be settled*, by arbitration in accordance with the commercial rules of the American Arbitration Association" (emphasis added). At § 6.2, Book Depot agreed that the Addendum was meant to be a binding and enforceable contract.

For these reasons, the court concludes that Book Depot agreed to arbitrate the issue of "Specific performance of the letter of intent, as addended." As used in § 5.2, the words "The Parties agree to arbitrate the terms of the final agreement" mean what they say - "*the Parties agree to arbitrate the terms of the final agreement*." "All disputes" means *"all disputes."* "Exclusively determined . . . by arbitration" means "*exclusively determined . . . by arbitration.*"[4]

Book Depot attempts to inject ambiguity into the Addendum by citing § 6.4 ("This Addendum and the Letter of Intent shall be construed and adjudicated under the jurisdiction and laws of Knoxville, Tennessee, USA."). Book Depot contends that words such as "adjudicated" and "jurisdiction" refer to proceedings occurring before a court, not an arbitrator. This court is not persuaded that § 6.4 is anything more than a choice of law provision for the benefit of the arbitrator. The court further notes that, at § 13, Book Depot acknowledged that "this Addendum and the Letter of Intent have been fully negotiated by

---

[4] In fact, Book Depot itself concedes that "the relevant language from section 5.2 *underscores that disputes determining final terms <u>are subject to arbitration</u>*[.]" [Doc. 12, p. 10] (emphasis added).

the Parties and that no provision of this Addendum or the Letter of Intent shall be construed or interpreted against the draftsman [Winegardner/ABC]." Even assuming that words such as "adjudicated" and "jurisdiction" inject some small degree of ambiguity into the agreement, only "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 650, 106 S. Ct. at 1419 (citation omitted). Book Depot has cited no such express or "most forceful evidence." "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [even if] the problem at hand is the construction of the contract language itself . . . or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

      Book Depot further contends that Hultink, in signing the Addendum, "never understood the arbitration provision to permit third parties to negotiate the very heart of what the ultimate merger agreement would be." [Doc. 1, ¶ 18]. The court has heard the testimony of Mr. Hultink and finds him to be an intelligent and experienced businessman. Mr. Hultink testified that he noticed and read the arbitration clause prior to signing the Addendum. "All contracts . . . in writing and signed by the party to be bound . . . shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written[.]" Tenn. Code Ann. § 47-50-112(a) (2001).

> To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. . . . If this were permitted, contracts would not be worth the paper on which they are written.

*Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950) (citations and quotations omitted). Book Depot's position is accordingly without merit.

Lastly, the court acknowledges Book Depot's contention that the pending arbitration represents "Defendants' ongoing efforts to force Plaintiffs into a contract to be drafted without their consent." If Book Depot is correct, then ABC is quite unlikely to succeed in arbitration. *See, e.g., EnGenius Enter., Inc. v. Herenton*, 971 S.W.2d 12, 17-18 (Tenn Ct. App. 1997) (a letter of intent will rarely be construed as a final agreement); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 383 (6th Cir. 2005) (A final agreement between Book Depot and ABC, under Tennessee law, can only "result from a meeting of the minds of the parties in mutual assent to the terms."). That question is, however, ultimately for the arbitrator to determine.

> [I]n deciding whether the parties have agreed to submit a particular [issue] to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether arguable or not, indeed even if it appears to the court to be frivolous, the . . . claim . . . is to be decided, not by the court . . . but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all [issues] to arbitration, not merely those which the court will deem meritorious.

*AT&T*, 475 U.S. at 649-50, 106 S. Ct. at 1419 (citation and quotation omitted); *accord Salary Policy Employee Panel v. TVA*, 149 F.3d 485, 489 (6th Cir. 1998) ("The merits of the underlying dispute are irrelevant to resolving an issue of arbitrability.").

Book Depot's motion for preliminary injunction must accordingly be denied, and ABC's partial motion to dismiss must be granted. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge